```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                          Criminal No. 09-cr-41-JL
                                                    Opinion No. 2014 DNH 253

Escolastico Suero

## MEMORANDUM ORDER DENYING PETITION FOR WRIT OF ERROR *CORAM NOBIS*

Escolastico Suero was indicted in this court on charges of conspiracy to possess with the intent to distribute, and to import, cocaine. See 21 U.S.C. §§ 841, 846, 952, 963. This conspiracy resulted in the death of one of its participants from ingesting packets of cocaine in an attempt to smuggle them into the United States from the Dominican Republic. With the assistance of counsel, Suero eventually pled guilty to one count of misprision of felony, see 18 U.S.C. § 4, for concealing the conspiracy. Based upon this plea, this court sentenced Suero to 15 months' imprisonment and one year of supervised release.

After completing that sentence, Suero sought to vacate his conviction by filing a petition with this court for a writ of error *coram nobis*. Suero--a lawful permanent resident, but not a naturalized citizen, of the United States--claims that his guilty plea resulted from erroneous advice from his own attorney, and a misrepresentation by the prosecution, as to what Suero calls the "immigration consequences" of the conviction. Specifically,

Suero says, he recently learned that his conviction for misprision of felony has made him ineligible to re-enter the United States should he voluntarily leave (which he had been planning to do to visit his family living abroad), even though the prosecutor and defense counsel had told Suero that pleading to misprision would not "cause immigration problems."  After a hearing, the court denies Suero's petition, for the reasons explained fully below.

**Applicable legal standard**

"Coram nobis is an ancient writ that was originally intended to allow courts to correct technical errors in their past judgments."  Murray v. United States, 704 F.3d 23, 28 (1st Cir. 2013).  While, "under the All Writs Act, 28 U.S.C. § 1651, federal courts are authorized to issue writs of error coram nobis to correct criminal judgments, . . . coram nobis is an extraordinary remedy, which is available only under circumstances compelling such action to achieve justice."  Id. (quotation marks omitted).  The petitioner bears the burden of proving his entitlement to a writ of error *coram nobis*.  See United States v. George, 676 F.3d 249, 255 (1st Cir. 2012).  To qualify for the writ, a petitioner must (1) "adequately explain his failure to seek relief earlier through other means"; (2) "show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will

eliminate this consequence"; and (3) "demonstrate that the judgment resulted from a fundamental error."  Murray, 704 F.3d at 29 (footnote omitted).

**Analysis**

The United States does not question that Suero has satisfied the first two elements of this test.  But the United States maintains that Suero cannot show that his guilty plea, and the ensuing judgment of conviction, resulted from error of any kind, particularly an error that can be used to collaterally attack the conviction through a petition for a writ of error *coram nobis*.

The United States argues that Suero's claim necessarily relies on the rule of Padilla v. Kentucky, 559 U.S. 356, 374 (2010), that "counsel must inform [his] client whether his plea carries a risk of deportation" in order to satisfy the Sixth Amendment's guarantee of effective assistance of counsel.  But, the argument continues, because Padilla was not decided until after Suero's conviction became final, his claim is barred by Teague v. Lane, 489 U.S. 288, 310 (1989).  In any event, the United States maintains that Suero received effective assistance of counsel as contemplated by Padilla, since his attorney correctly advised him that a guilty plea to misprision of felony would not render Suero deportable.  The United States further argues that, because that is also what the prosecutor told Suero (through counsel), his claim that his plea resulted from a

misrepresentation likewise fails. As explained fully below, this court denies Suero's petition because he has failed to convincingly demonstrate that either his criminal defense attorney or the prosecutor misstated the "immigration consequences" of pleading guilty to misprision of felony. The court therefore need not, and does not, reach the United States' retroactivity argument.

In his effort to carry his burden of proving his entitlement to *coram nobis* relief, Suero has come forward with three pieces of evidence: (1) a letter from the prosecutor to Suero's defense attorney offering to resolve the conspiracy charges through a plea to misprision of felony; (2) an affidavit from the defense attorney; and (3) an affidavit from Suero himself. These materials, however, fail to convincingly establish that either the prosecutor or defense counsel told Suero, prior to the entry of his guilty plea to misprision of felony, that the resulting conviction would leave him free to re-enter the United States should he choose to leave the country voluntarily (as he claims to be unable to do now). Instead, this court takes Suero's submissions to show that the prosecutor told defense counsel--accurately--that "misprision is not a deportable offense," and that defense counsel simply relayed that assurance to Suero.

Acknowledging "the concerns [Suero] has with regard to deportation," the prosecutor's letter to defense counsel states

that the prosecutor had discussed those concerns with officers of Immigration and Customs Enforcement, and that in those discussions the prosecutor had "been told that misprision is not a deportable offense. Accordingly, if concerns about deportation are [Suero's] paramount concern, then this resolution should allay his fears on this issue"--by offering a plea to misprision of felony. The letter does not mention any other possible collateral consequence of such a plea, and does not use the phrases "immigration consequences" or "immigration concerns."

    Defense counsel states in his affidavit that the prosecution "represented in its letter that it tendered this offer [i.e., a plea to misprision of felony] in order to assuage [Suero's] immigration concerns" and that, "[i]n advising [Suero], [counsel] relied on the [prosecution's] representation that conviction of misprision of a felony would not carry immigration consequences" (emphases added). As just noted, however, the letter does not employ the terms "immigration concerns" or "immigration consequences," and the only such "concern" or "consequence" it mentioned was deportation (which the prosecution said would not follow from the plea). Yet defense counsel's affidavit goes on to state that "[a]s a result" of the prosecution's "representation," he "advised [Suero] that his conviction for misprision of felony would not carry immigration consequences." Employing similar terminology, Suero's affidavit states that the

prosecution "offered a deal which they said would not cause immigration problems," i.e., a plea to misprision of felony, which defense counsel advised Suero "would not be an immigration problem for [him]."

Read literally, of course, the phrases "immigration problems," "immigration concerns," and "immigration consequences" could conceivably encompass a broad range of difficulties, including the one Suero says he now faces as a result of his plea to misprision of felony, i.e., the inability to re-enter the United States if he elects to leave. But Suero's submissions leave this court with considerable doubt as to whether defense counsel ever actually used one of those phrases in explaining the plea offer to Suero. Again, defense counsel attests that his advice to Suero was based on the prosecution's "representation," but that representation, on its face, was simply that "misprision is not a deportable offense"--not that it was free of any "immigration consequences."

While it is logically possible that, in advising Suero, defense counsel erroneously used the broader phrase "immigration consequences" to relay the prosecution's narrower representation, one would have expected defense counsel to be forthcoming about such an error if it indeed occurred (at least in light of his apparent willingness to submit an affidavit in support of Suero's argument that his plea resulted from counsel's ineffective

assistance). Instead, it appears that counsel's affidavit was written to elide the difference between "deportation" and "immigration consequences," just as it appears that Suero's affidavit was written to elide the difference between "deportation" and "immigration problems."

In any event, regardless of whether defense counsel used the phrases "immigration consequences" or "immigration problems" in relaying the prosecution's representation to Suero, there is no evidence--including Suero's own affidavit--that he understood either of those terms to encompass the difficulty he now faces. While Suero states in his affidavit that he "want[s] nothing more than to visit [his] family in the Dominican Republic," he never claims to have communicated this desire to defense counsel at any point before deciding to plead guilty to misprision. Suero's affidavit says only that he "informed [defense counsel] that [Suero's] immigration status was the most important thing" and that he "assumed that because [defense counsel] knew of [Suero's] immigration concerns, [defense counsel] would not advise [Suero] to take a plea that carried any immigration consequences."

Like the statements in defense counsel's affidavit, these statements appear to have been carefully crafted to speak the literal truth while saying nothing of consequence. If Suero told defense counsel that his paramount concern was not being deported, it would be accurate to describe that statement as "my

immigration status was the most important thing to me." It is also logically possible that Suero described his concern as his "immigration status," so that, when defense counsel came back with a plea offer he said would not cause "immigration problems," Suero took that to mean that the plea would not affect his ability to leave and re-enter the United States as he pleased. Again, though, if that were the case, one would expect Suero simply to say so in his affidavit.[1] Crucially, he does not. Nor, moreover, did Suero take advantage of the opportunity to testify (or to present further testimony from defense counsel) in open court at the hearing this court held on his petition--even though Suero was personally present at the hearing, and even though this court had scheduled the hearing after announcing that it was "unlikely to grant the requested writ of *coram nobis* on the record before it." Order of June 27, 2014.

So, although a generous (or, perhaps more accurately, a naive) reading of the affidavits could support the finding that defense counsel told Suero that pleading guilty to misprision would not carry "immigration consequences," which Suero took to include any effect on his right to foreign travel, the court declines to make that finding in the absence of more specific evidence to that effect. As already noted, Suero bears the

---

[1] It should be noted that, while he was born and raised in a Spanish-speaking country, Suero does not claim any difficulty in understanding English.

burden of proving his entitlement to the extraordinary remedy of *coram nobis*; in this court's estimation, a pair of affidavits carefully drafted to dance around the crucial issue of what defense counsel actually told Suero about the plea offer do not sustain that burden.  Based on the evidence Suero has chosen to present, the court finds that defense counsel simply told Suero, as the prosecution stated in its letter, that "misprision is not a deportable offense," without discussing any broader potential "immigration problems" or "immigration concerns."[2]

Suero argues that even the statement "misprision is not a deportable offense" is false.  This argument is based on an unpublished decision by the Board of Immigration Appeals ("BIA"), that misprision of felony is a "crime of moral turpitude," In re Robles-Urrea, No. A37 805 968, 2006 WL 1558796 (BIA Apr. 10,

---

[2]Suero does not appear to argue (and indeed, appears to affirmatively disclaim any argument) that, if defense counsel said nothing about whether the misprision plea could render Suero excludable (and, as just discussed at length in the main text, that is indeed the conclusion the record compels), then that lack of advice was itself ineffective assistance in violation of the Sixth Amendment.  But any such claim would be at odds with Padilla, which expressly relied on "the unique nature of deportation."  559 U.S. at 365; see also Brown v. Goodwin, No. 09-211 (D.N.J. May 11, 2010) ("Padilla seems not importable-- either entirely or, at the very least, not readily importable-- into scenarios involving collateral consequences other than deportation").  Furthermore, insofar as Padilla does (contrary to the express limitations of its holding) require counsel to advise his or her client on the "immigration consequences" of a conviction beyond deportation, that would unquestionably be a new rule that Suero could not use to collaterally attack his conviction, which became final before Padilla was decided.  See Chaidez v. United States, 133 S. Ct. 1103, 1105 (2013).

2006), aff'd on reconsideration, 24 I. & N. Dec. 22 (BIA 2006), which, as such, subjects him to deportation under 8 U.S.C. § 1227(a)(2)(i).³  As the United States points out, however, a single conviction for such an offense makes an alien deportable only if (among other things) it occurred "within five years after the date of admission" to the country.  Id. § 1227(A)(2)(i)(I) (parenthetical omitted).  Suero, by his own account, was admitted to the United States in 1994, when he received legal permanent resident status, but was not convicted of misprision of felony until 2010.  In his case, then, misprision is not a "deportable offense"--as the prosecutor correctly told defense counsel and defense counsel, in turn, correctly told Suero.

Suero further argues that, even if misprision of felony is not a "crime involving moral turpitude" under 8 U.S.C. § 1227(a)(2)(i), it nevertheless subjects him to deportation as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(iii), specifically, as "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness," as enumerated in 8 U.S.C. § 1101(a)(43)(S).  As Suero acknowledges,

---

³As the United States also points out, the BIA's decision was subsequently reversed by the Ninth Circuit, which held that "misprision of felony is not categorically a crime involving moral turpitude," creating a circuit split on this issue. Robles-Urrea v. Holder, 678 F.3d 702, 707-08 (9th Cir. 2012) (rejecting Itani v. Ashcroft, 298 F.3d 1213 (11th Cir. 2002)).

however, the BIA has squarely held that a federal conviction for misprision of felony does not fall within the scope of § 1101(a)(43)(S). In re Espinoza-Gonzalez, 22 I. & N. Dec. 889 (BIA 1999). While Suero argues that "[w]hether misprision of a felony is an aggravated felony is the subject of dispute among the federal courts," the cases he cites involve either a different crime or a different subsection of § 1101(a) and are therefore not in tension with the holding of Espinoza-Gonzalez. See Denis v. Att'y Gen., 633 F.3d 201, 213 & n.17 (3d Cir. 2011) (state-law conviction for tampering with physical evidence falls within § 1101(a)(43)(S)); Patel v. Mukasey, 526 F.3d 800, 801 (5th Cir. 2008) (federal conviction for misprision of felony, when underlying felony was bank fraud, is an "offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" under §1101(a)(43)(M)(I)).

 Because the BIA has ruled that misprision of a felony is not an aggravated felony under 8 U.S.C. § 1101(a)(43)(S), and Suero has come forward with no authority to the contrary, he has failed to show that the prosecution, or his own attorney, made a "misrepresentation" in saying that his plea to misprision of felony would not make him deportable.[4]

---

 [4]In his reply memorandum, Suero offers that this statement was "misleading" because "[n]o First Circuit law supports" it. But again, as far as Suero has argued, or this court can tell, no federal court of appeals has held, contrary to Espinoza-Gonzalez, that a federal conviction for misprision of felony amounts to an

Suero also maintains that, even if his conviction does not subject him to removal from the United States, the prosecution's statement that "misprision is not a deportable offense" was nevertheless false on its face because the conviction in fact disqualifies him from readmission into the country should he choose to leave voluntarily. It is true that an alien who has been convicted of a crime of moral turpitude is ineligible to be admitted to the United States, 8 U.S.C. § 1182(a)(2)(A)(i), and that, again, the BIA has ruled that misprision of felony qualifies as such an offense, see Robles-Urrea, 2006 WL 1558796 (though it is also true that the BIA's decision has been overruled, see note 3, supra). But, as this court has found, neither the prosecutor nor defense counsel ever told Suero that pleading guilty to misprision of felony would not prevent his readmission to the United States, should he choose to leave of his own volition--only that "misprision is not a deportable offense."

Suero argues that this statement was nevertheless false because "the common and ordinary meaning" of "deportable" necessarily encompasses "exclusion from admission to the United States" as well as "removal." This court disagrees. General

---

aggravated felony under § 1101(a)(43)(S). The theoretical possibility that our court of appeals could be the first to do so does not render the prosecution's statement that Suero's plea to misprision would not make him deportable a "misrepresentation."

purpose dictionaries define "deport" as "to send out of the country," Merriam-Webster's Collegiate Dictionary 335 (11th ed. 2007); see also, e.g., American Heritage Dictionary 488 (4th ed. 2000) ("expel from a country"), as do legal dictionaries, see, e.g., Black's Law Dictionary 532 (10th ed. 2014) (defining "deportation" as "removing a person to another country").[5] While, as Suero points out, the Immigration Reform and Immigrant Responsibility Act of 1996 created a "unified procedure, known as a removal proceeding, for exclusions and deportations alike," Judulang v. Holder, 132 S. Ct. 476, 479 (2011) (citing 8 U.S.C. §§ 1229, 1229a), that procedural consolidation did nothing to change "the common and ordinary meaning" of the word "deportable." Indeed, exclusion and deportation have always been, and remain, distinct concepts, since "the statutory bases for excluding and deporting aliens have always varied." Id.

Finally--and perhaps most importantly--Suero has not even said that his <u>own</u> understanding of the term "deportable," as it was used by the prosecution, extended beyond forcible removal to exclusion from the country following a voluntary trip abroad. Again, while Suero now says that he "want[s] nothing more than to visit [his] family in the Dominican Republic," he does not say

---

[5]These include the very on-line dictionary that Suero himself cites--incorrectly--as "describing this term to include both 'removal' and 'exclusion.'" See http://collinsdictionary.com (defining "deportation" as "expulsion, of an undesirable alien, from a country").

that he ever expressed that desire, or any other bent toward future international travel, to his defense attorney at any point before accepting the prosecution's offer to plead to misprision of felony. On the record Suero has assembled, then, there is no way to understand the prosecution's statement that "misprision is not a deportable offense," or defense counsel's communication of that statement to Suero, as an assurance that the conviction was also not an <u>excludable</u> offense. It bears repeating that Suero himself does not even say that he understood it that way.

Accordingly, Suero has failed to show that his guilty plea resulted from a misrepresentation by either the prosecutor or defense counsel, both of whom simply told Suero, accurately, that the plea would not result in his deportation. Because Suero has therefore failed to show that the resulting conviction was the product of fundamental error, his petition for a writ of error coram nobis (document no. 210) must be DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: December 5, 2014

cc: Murat Erkan, Esq.
    Theodore M. Lothstein, Esq.
    Debra M. Walsh, AUSA
    Donald A. Feith, AUSA
    Seth R. Aframe, AUSA